IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

CLEARON CORP., INC.,

     Plaintiff,

v.                                    CIVIL ACTION NO. 2:09-0196

THE UNITED FOOD AND COMMERCIAL
WORKERS, LOCAL 400,

     Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the court are the respective motions for summary judgment of the plaintiff, Clearon Corporation, Inc., ("Clearon")(Doc. No. 15), and of the defendant, The United Food and Commercial Workers, Local 400, ("the Union")(Doc. No. 17). For the reasons set forth below, the court grants summary judgment in favor of defendant.

### I.  Factual and Procedural Background

The parties do not dispute the material facts in this matter.  Clearon and the Union are signatories to a collective bargaining agreement ("CBA") made effective December 1, 2005, which includes, among others, provisions relating to short-term illness benefits ("STI benefits").  (Doc. No. 1 Ex. A.)  The provisions relevant to this court's inquiry are set forth in Article 12 of the CBA, and read as follows:

Short Term Illness Benefits

> 12.1   Under certain conditions, full-time employees unable to work due to personal illness or injury shall enjoy sick leave (STI) in the form of a wage continuation program.   After completion of the probationary period, employees absent from their regularly scheduled work due to non-work related illness or injury will receive 100% of their base daily wages for the period of the illness or injury, not to exceed a total of 40 hours of sick pay in any work week, for a maximum of the first six (6) full weeks of absence, and then will receive 85% of pay from the seventh (7th) week through the eighteenth (18th) week, and then 75% of pay until reaching the maximum of twenty-six (26) weeks for any one illness or injury.   The STI benefit shall not be paid for cosmetic surgery, as opposed to reconstructive or required surgery.

> Any employee who returns to work for a period of 14 calendar days or less, and who then suffers a relapse of the same illness or injury that causes the employee to again be absent, shall be considered a continuation of the initial absence for the purposes of STI benefits. The days spent at work shall not count towards the 26 week entitlement.   STI benefits shall run concurrently with FMLA leave, if the employee qualifies for FMLA.[1]

> For the purposes of this Article, the term "base daily wages" is defined as the employee's actual hourly wage in effect on the last day worked in his regular classification, and does not include overtime, shift differential, longevity or any other component of wages.

> 12.2   Employees requesting STI benefits must complete an FMLA request form (WH380), provided by the Company, and provide it to the Employee Health Nurse, prior to the illness or injury if feasible, to determine qualification for benefits.   Periodically during the course of the illness or injury, the employee will be required to provide the Employee Health Nurse with updated information as to the status of the illness or injury, and may be required to meet with a physician of the Company's choosing to confirm the continued qualification

---

[1]   Unpaid leaves of absence under the Family and Medical Leave Act ("FMLA") are further addressed in Article 15 of the CBA.   (Doc. No. 16 Ex. 1.)

for benefits.  Failure to do so may result in the loss of
the benefits.  Any illness or injury that qualifies as an
FMLA serious health condition shall, of course, be
subject to all of the provisions of the FMLA, provided
the employee is eligible for the FMLA.

(Doc. No. 16 Ex. 1.)

In order to resolve disputes arising under the CBA, the
parties included in Article 5 a grievance procedure, to be
followed by arbitration if the grievance procedure proves
unsuccessful.  (Id.)  The parties stipulated that "[t]he decision
of the Arbitrator on any issue properly before him in accordance
with the provisions of this Agreement shall be final and binding
on the parties unless changed by the parties through negotiations
and reduced to writing."  (Id.)  Section 5.6 makes plain that the
arbitrator's authority is limited to resolving disputes arising
under the CBA, and does not extend to amending or modifying the
agreement, nor to establishing new terms or conditions under the
CBA.  (Id.)

On December 27, 2007, the Union filed a grievance on behalf
of George Atkins, a production operator and chief union steward
at Clearon's facility in South Charleston, West Virginia.  (Doc.
No. 16 Ex. 3.)  The grievance alleges that Mr. Atkins had
informed his supervisor in advance that, on the morning of
December 26, 2007, he would need to leave work for a doctor's

appointment and medical testing.[2]   (Id.)   After working the first
4.5 hours of his shift on that day, he put down the remaining 7.5
hours for STI benefits.   (Id.)   On the following day, he was
informed that the prior day's absence would be deemed unexcused,
would not qualify for STI benefits, and would count as an
"occurrence" on his attendance record.   (Id.)   The grievance
sought STI benefits for the 7.5 hours he worked on December 26,
2007, as well as rescission of the "occurrence" from his
attendance record.   (Doc. No. 16 Ex. 3.)

When Clearon denied the Union's grievance, the parties
mutually agreed to the selection of Arbitrator Neil S. Bucklew to
resolve the dispute.   Arbitration was conducted in Charleston,
West Virginia, on September 26, 2008, with both parties
represented by counsel.   (Doc. No. 16 Ex. 2.)   Clearon's position
at arbitration was that Section 12.2 mandates the completion of a
FMLA request form (Form WH380) prior to an employee absence, if
feasible, in order for the employee to qualify for STI benefits.
(Doc. No. 16 Ex. 4 at 6.)   Clearon argued that the language of
Article 12 of the CBA was unambiguous, and that no other
arguments or external evidence should be considered in resolving

---

[2]   Mr. Atkins' testimony indicates that he had been
suffering abdominal pain and required a nuclear scan of his
gallbladder.   (Doc. No. 16 Ex. 2 at 8-9.)   He further testified
that, if he had been unable to make the December 26th
appointment, he would have had to wait two months to be
rescheduled for testing.   (Id.)

-4-

the dispute. (Id.) For its part, the Union contended that Section 12.2's reference to completion of Form WH380 relates only to determining FMLA benefits, and does not limit the right to STI benefits set forth in Section 12.1. (Id. at 5.) The Union sought payment on Mr. Atkins' behalf for the 7.5 hours claimed, as well as rescission of the "occurrence" from his attendance record. (Id.)

In his decision, Arbitrator Bucklew first considered whether the CBA language at issue was, indeed, ambiguous:

> The first issue I will discuss is whether the relevant language of the contract in Article 12 is unambiguous. It is interesting that each party argues it is unambiguous language. The union states it is clear and offers an interpretation that is markedly different from that of the company, who also describes it as unambiguous language.
>
> In 12.1 the union argues the first sentence grants a right of wage continuation for all full-time employees past the probationary period, for work lost due to personal illness or injury. The union maintains this stand-alone benefit is not limited by 12.2. They argue that this provision (12.2) only requires a review of the FMLA form WH380 to determine eligibility for FMLA benefits.
>
> The company reads the same language and feels that the language of 12.1 is not an absolute right to STI benefits but is in fact limited by 12.2. They interpret 12.2 to say that to be eligible for STI benefits you must complete the FMLA form and be found eligible for STI benefits having met the standards of form WH380.
>
> In summary, the contract language is ambiguous. The parties offer two clearly different and plausible interpretations for the same language.

(Id. at 7.)

Having found the CBA language to be ambiguous, the arbitrator proceeded to consider the parties' bargaining history and past practices. (Id. at 7-8.) He then concluded that the preponderance of the information before him supported the Union's position:

> In 12.1 the parties continued the wage continuation program for STI benefits essentially as it existed before. The company retains the right to manage such absences so they are not abused. The company has a right to [expect] prior notice whenever feasible and for regular medical appointments to be scheduled at a time that work is not missed.
>
> In this case the absence was a four hour special medical test. The grievant testified he was in pain and it was not reasonable to delay the test for two months (when the next open test date was available).
>
> In my opinion the use of STI was justified under the contract and no occurrence should have been issued.
>
> In 12.2 there is a requirement that employees requesting STI benefits must complete FMLA request form (WH380). In my opinion this requirement allows the company to have STI benefits run concurrently with FMLA leave in appropriate cases. The contract places a requirement on employees to complete the form and the company has the right to create an administrative process to assure the completion of the form. Refusal or failure to do so in a timely manner are appropriate grounds for discipline. However, the completion of the form is to determine qualification for benefits under FMLA and not to determine qualifications for the wage continuation benefit under 12.1.

(Id. at 8.)

Arbitrator Bucklew upheld the grievance filed by the Union, and directed that Mr. Atkins be paid STI benefits for the 7.5 hours claimed on December 26, 2007, and that the "occurrence" be

removed from his record.  (<u>Id.</u> at 9.)  Invoking jurisdiction
pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 185(c)(2), Clearon
then filed suit in this court in an attempt to have the
arbitrator's decision vacated on the grounds that it did not draw
its essence from the contract at issue, the CBA.  (Doc. No. 1.)
The Union has filed a counterclaim for enforcement of the
arbitrator's award, as well as for an award of attorney's fees
and costs expended in defending this action.  (Doc. No. 4.)  The
instant cross-motions for summary judgment followed.  (Doc. Nos.
15, 17.)

## II.  <u>Standard for Summary Judgment</u>

Turning to the issue of summary judgment, Rule 56 of the
Federal Rules of Civil Procedure provides that

> [t]he judgment sought shall be rendered if the pleadings,
> the discovery and disclosure materials on file, and any
> affidavits show that there is no genuine issue as to any
> material fact and that the movant is entitled to judgment
> as a matter of law.

Fed. R. Civ. P. 56(c).  The moving party has the burden of
establishing that there is no genuine issue as to any material
fact.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).
As the United States Supreme Court of Appeals stated in <u>Celotex</u>,
"the plain language of Rule 56(c) mandates the entry of summary
judgment, after adequate time for discovery and upon motion,
against a party who fails to make a showing sufficient to
establish the existence of an element essential to that party's

-7-

case, and on which that party will bear the burden of proof at trial." Id. at 322.

Once the moving party has met its burden, the burden then shifts to the nonmoving party to produce sufficient evidence for a jury to return a verdict for that party.

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find, by a preponderance of the evidence, that the plaintiff is entitled to a verdict . . . .

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 250-51. Significantly, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. at 256. Finally, "[o]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

### III.  Analysis

Judicial review of an arbitration award is "among the narrowest known to the law." Rock-Tenn Co. v. United Paperworkers Int'l Union, 184 F.3d 330, 333-35 (4th Cir.

1999)(internal citations omitted).  Quoting <u>United Paperworkers</u>
<u>Int'l Union v. Misco, Inc.</u>, 484 U.S. 29, 38 (1987), the <u>Rock-Tenn</u>
court summarized this "extremely limited" review as follows:

> The arbitrator may not ignore the plain language of the
> contract; but the parties having authorized the
> arbitrator to give meaning to the language of the
> agreement, a court should not reject an award on the
> ground that the arbitrator misread the contract.
>
> . . . As long as the arbitrator <u>is even arguably</u>
> <u>construing or applying the contract</u> and acting within the
> scope of his authority, that a court is convinced he
> committed serious error does not suffice to overturn his
> decision.

<u>Rock-Tenn</u>, 184 F.3d at 334 (emphasis supplied).

Under this most circumscribed level of review, the court
must uphold the arbitrator's decision so long as it "draws its
essence from the agreement."  <u>United Steelworkers v. Enterprise</u>
<u>Wheel and Car Corp.</u>, 363 U.S. 593, 597 (1960).  Only where it is
clear that "the arbitrator must have based his award on his own
personal notions of right and wrong, . . . does the award fail to
'draw its essence from the collective bargaining agreement.'"
<u>E.I. DuPont de Nemours & Co. v. Grasselli Employees Indep.</u>
<u>Assoc.</u>, 790 F.2d 611, 614 (7th Cir. 1986)(internal citations
omitted).

Clearon contends that the arbitrator read ambiguity into the
language of Article 12 in order to arrive at an interpretation he

-9-

preferred.[3]  (Doc. No. 16 at 10.)  The company argues that the
arbitrator's decision indicates that he found Section 12.2 to be
ambiguous purely on the basis that the parties assigned different
meanings to it.  (Id. at 10-11.)  Clearon further argues that the
award essentially deletes the requirement of completion of the
Form WH380, as well as the determination process to qualify for
STI benefits.  (Id. at 14 (citing Patten v. Signator Ins. Agency,
Inc., 441 F.3d 230, 236 (4th Cir. 2006)).)

A term in a contract is properly considered ambiguous where
it is susceptible of more than one meaning.  Atalla v. Abdul-
Baki, 976 F.2d 189, 192 (4th Cir. 1992).  This is the standard

---

[3]  Specifically, Clearon explains the poor logic it sees in
the arbitrator's reasoning as follows:

> The arbitrator found that the Company included the
> requirement of completing a WH380 form to ensure that any
> short-term illness leave would run concurrently with any
> FMLA leave.  This interpretation, however, is clearly at
> odds with the actual language of the contract.  The
> language requiring completion of the WH380 form is
> included in the section of Article 12 that is entitled
> "Short-term Illness Benefits."  More importantly, the
> sentence that imposes the mandatory duty to complete a
> WH380 does not refer to FMLA "benefits," only to the use
> of the FMLA form.  Rather, the last sentence of § 12.2
> discusses the FMLA and provides that "[a]ny illness or
> injury that qualifies as an FMLA serious health condition
> shall, of course be subject to all of the provisions of
> the FMLA, provided the employee is eligible for the
> FMLA."  That last sentence serves to make sure that any
> leave runs concurrently with FMLA leave.  Thus, the word
> "benefits" in the sentence requiring completion of the
> WH380 form can only refer to short-term illness benefits,
> and cannot refer to FMLA benefits.

(Doc. No. 16 at 13.)

-10-

applied by Arbitrator Bucklew, contrary to plaintiff's assertion that he found Article 12 to be ambiguous merely because the parties disagreed as to its meaning.  He first explained the respective positions of the parties, concluding that they represented alternative, plausible interpretations of the same contractual language.[4]  (Doc. No. 16 Ex. 4 at 7.)  Having found this language to be ambiguous, the arbitrator then properly considered external evidence to divine the parties' intent.  See World-Wide Rights Ltd. Partnership v. Combe, Inc., 955 F.2d 242, 245 (4th Cir. 1992).

As such, the court is not persuaded that the arbitrator reached his decision on the basis of his own personal concepts of fairness and equity, divorced from the language of the agreement,

---

[4]  The Union explains its understanding of Article 12 as follows:

> If, as the Company maintains, the FMLA form was a prerequisite to the granting of sick leave benefits, logic and good draftsmanship dictate that that "requirement" would be placed in Article 12.1, which sets forth the basic STI benefits.  However, the only requirement stated in that provision is that employees complete their probationary period. . . .

> Second, it is important to note that each time the contract refers to STI benefits, the phrase "STI benefits" is used *without exception*.  It stands to reason that when the parties refer to sick leave benefits, they are discussing the STI *only when that phrase ("STI benefits") is used*.  However, the sentence regarding the WH380 form in Article 12.2 says, ". . . to determine qualification for benefits" without reference to "STI."

(Doc. No. 20 at 5 (emphasis in original).)

itself.  His mere reference to Mr. Atkins' symptoms and circumstances does not indicate a bias or predisposition to rule in Mr. Atkins' favor, and there is no indication that he bore even the slightest animus toward plaintiff.

"[I]f an 'arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'"  Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001)(quoting Eastern Assoc. Coal Corp. v. Mine Workers, 531 U.S. 57, 62 (2000)).  It is this court's task to determine only whether the arbitrator did his job – not whether he did it "'well, or correctly, or reasonably,'" but simply whether he did it.  Remmey v. PaineWebber, Inc., 32 F.3d 143, 146 (4th Cir. 1996)(quoting Richmond, Fredericksburg & Potomac R.R. Co. v. Transportation Communications Int'l Union, 973 F.2d 276, 281 (4th Cir. 1992)). Finding no basis on which to impugn Arbitrator Bucklew's decision in this case, the court upholds his award.

Defendant contends that the instant suit is frivolous, and that Clearon's refusal to abide by the arbitrator's decision entitles the Union to an award of its fees and costs in defending this action.  "Where a challenge goes to the fundamental issues of arbitrability or of whether an arbitration award 'draws its essence' from the contract, the standard for assessing its

justification is . . . the relatively lenient one of whether it has 'any arguable basis in law.'" United Food & Commercial Workers, Local 400 v. Marval Poultry Co., 876 F.2d 346, 351 (4th Cir. 1989)(internal citations omitted).  The Marval court continued, "Because these challenges go to the fundamental questions of the arbitrator's very power to act, they must be considered sufficiently 'justified' for this purpose unless there is literally no reasonably arguable legal support for them."  Id. (citing Western Elec. Co. Inc. v. Communication Equip. Workers, Inc., 409 F. Supp. 161, 178 (D. Md. 1976)).

> Where, however, the challenge goes not to issues of the fundamental power of an arbitrator to make an award but to the merits of an arbitrator's award as made, the standard of justification is much more stringent. Indeed, because such challenges, if undeterred, inevitably thwart the national labor policy favoring arbitration, they must be considered presumptively unjustified.

Marval, 876 F.2d at 351 (citing Int'l Ass'n of Machinists & Aerospace Workers v. Texas Steel Co., 639 F.2d 279, 284 (5th Cir. 1981)).

Although the Union argues that Clearon's challenge to the arbitrator's decision is essentially an attack on the merits, and should thus be evaluated under the second standard above, the court is unpersuaded.  Clearon alleged in this action that the arbitrator ignored the plain language of the CBA in order to reach a result he deemed just.  Allegations of this sort go to whether an award "draws its essence" from the agreement.  See

-13-

<u>U.S. Postal Serv. v. Am. Postal Workers Union, AFL-CIO</u>, 204 F.3d 523, 527 (4th Cir. 2000)("The requirement that the award 'draw its essence' from the parties' agreement means that 'the arbitrator may not ignore the plain language of the contract.'"). Because Clearon's argument had at least some arguable basis in law, the court denies defendant's request for attorney's fees.

### V.  <u>Conclusion</u>

For the reasons set forth above, the court hereby 1) **GRANTS** defendant's Motion for Summary Judgment (Doc. No. 17); 2) **DENIES** plaintiff's Motion for Summary Judgment (Doc. No. 15); and 3) **DENIES** plaintiff's motion for oral argument on the same (Doc. No. 23), there being no issues requiring argument beyond that set forth in the parties' briefs.

The Clerk is directed to send copies of this Memorandum Opinion and Order to counsel of record.

It is **SO ORDERED** this 30th day of March, 2010.

ENTER:

David A. Faber
Senior United States District Judge

-14-